**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| CHARLES AARON GOLDSTEIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:21-CV-408-HEA |
| ) | |
| LT. UNKNOWN MCKEE, et al., ) | |
| ) | |
| Defendants. ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on the application of self-represented plaintiff Charles Aaron Goldstein, an incarcerated person at Northeast Correctional Center, to proceed in the district court without prepaying fees or costs. Having reviewed the motion and the financial information submitted in support, the Court will grant the motion, and assess an initial partial filing fee of $1.00. Additionally, for the reasons discussed below, the Court will issue process on the complaint as to claim three against defendant Lieutenant McKee in his individual capacity. The Court will dismiss without prejudice claims one and two and defendants Nurse Shandi and St. Charles County Correctional Center.

### Initial Partial Filing Fee

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action *in forma pauperis* is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20

percent of the preceding month's income credited to his account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the account exceeds $10.00, until the filing fee is fully paid. *Id.*

Plaintiff did not submit a certified copy of his inmate account statement for the six months preceding the filing of his complaint. He submitted a printed page from the Missouri Department of Corrections dated April 12, 2021 that shows he owes $2,875.93 in fees to Fulton Reception and Diagnostic Center. Based upon the information the Court has in the record, the Court will assess an initial partial filing fee of $1.00. This amount is reasonable based upon the information before the Court. *See Henderson v. Norris*, 129 F.3d 481, 484 (8th Cir. 1997) (when a prisoner is unable to provide the Court with a certified copy of his prison account statement, the Court should assess an amount "that is reasonable, based on whatever information the court has about the prisoner's finances.").

### Legal Standard on Initial Review

This Court is required to review complaint filed *in forma pauperis*, and must dismiss it if it is frivolous, malicious, or fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2). An action is frivolous if it "lacks an arguable basis in either law or fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). An action fails to state a claim upon which relief may be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although a plaintiff need not allege facts in painstaking detail, the facts alleged "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. This standard "demands more than an unadorned, the-defendant-unlawfully-

harmed-me accusation." *Iqbal,* 556 U.S. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id.* at 679. The court must assume the veracity of well-pleaded facts, but need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citing *Twombly,* 550 U.S. at 555).

This Court must liberally construe complaints filed by laypeople. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This means that "if the essence of an allegation is discernible," the court should "construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)). However, even *pro se* complaints must allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). Federal courts are not required to assume facts that are not alleged, *Stone*, 364 F.3d at 914-15, nor are they required to interpret procedural rules so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States,* 508 U.S. 106, 113 (1993).

## The Complaint

Plaintiff brings this civil rights action under 42 U.S.C. § 1983 alleging violations of his Eighth Amendment rights arising out of his exposure to the COVID-19 virus and his quarantine in the St. Charles Correctional Center ("SCCC") from September 2020 to February 2021. He sues defendants Lieutenant McKee and Nurse Shandi,[1] in both their official and individual capacities, and sues SCCC.

---

[1] Plaintiff refers to the defendant nurse as both Nurse Shandi and Nurse Shandie. For clarity and consistency, the Court will refer to her as Nurse Shandi.

Plaintiff enumerates three separate claims in his complaint. In his first claim, plaintiff states that for nearly sixty days while incarcerated at SCCC, he was placed in quarantine, not allowed to attend any court hearings, and not allowed unrecorded contact with his lawyer.

In his second claim, plaintiff states that he has screws and plates in his shoulder from a past motorcycle accident. He states the during quarantine he "had screws coming out." He sought medical attention, but Nurse Shandi told him that he could not see a doctor until after he was off quarantine.

Finally, for his third claim, plaintiff states that in October 2020, Lieutenant McKee informed plaintiff's wing that they were being quarantined because of exposure to COVID-19. He states, in full:

> For 60 days we were not allowed to leave the wing, during which time about 3-6 people a week came down with Covid they did nothing to protect us from it. We didn't get clean clothes for almost 14 days sometimes and were made to use [infected] areas in the day room and showers as well. I was basically made to get Covid before I could plea out. I eventually caught Covid where I permanently lost my smell, and my life was put in [jeopardy].

In addition to losing his sense of smell, plaintiff states he has no feeling in his right pinky finger "I think due to no medical attention for the screws in my shoulder." For relief, he seeks $680,000 in damages.

### Discussion

(1)   Claim No. 1—Denial of Access to Court and Attorney

For his first claim, plaintiff states only that he was not allowed unrecorded contact with his lawyer nor was he allowed to attend court hearings during his nearly sixty-day quarantine at SCCC. This claim is subject to dismissal on initial review pursuant to 28 U.S.C. § 1915(e).

Liberally construed, plaintiff has not stated a claim for a constitutional violation under 42 U.S.C. § 1983. Plaintiff does not allege what constitutional right was violated in claim one. It

appears, however, that plaintiff is seeking damages under § 1983 for alleged violations of his Sixth Amendment right to a speedy trial. Such claims are more properly brought in his underlying criminal case or in a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

Within the framework of an action brought under § 1983, however, plaintiff has not stated a plausible claim. First, he does not allege any defendant is personally responsible for the alleged constitutional violations. Section 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights." *Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006) (quoting *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990)); *see also Kohl v. Casson*, 5 F.3d 1141, 1149 (8th Cir. 1993) (dismissing plaintiff's excessive bail claims because none of the defendants set plaintiff's bail, and therefore, "there can be no causal connection between any action on the part of the defendants and any alleged deprivation" of plaintiff's rights). To that end, a plaintiff must allege facts connecting the defendant to the challenged action. *See Bitzan v. Bartruff*, 916 F.3d 716, 717 (8th Cir. 2019). Plaintiff has alleged no facts connecting any of the named defendants to claim one, and the Court will dismiss this claim without prejudice.

Additionally, to the extent the Court could treat plaintiff's claim as one arising under the First Amendment for access to the courts, it would fail because plaintiff has not alleged prejudice. To state a claim premised upon denial of access to the courts, a plaintiff must demonstrate that he suffered an "actual injury." *Lewis v. Casey*, 518 U.S. 343, 351-52 (1996). The Eighth Circuit has recognized that, when bringing an access-to-courts claim, it is insufficient to merely allege a denial of access to a specific resource, even if the denial is systemic. *Sabers v. Delano*, 100 F.3d 82, 84 (8th Cir. 1996) (citing *Lewis*, 518 U.S. at 353 n.4). Instead, the plaintiff must plead that the lack of the resource deprived him of some specific opportunity to defend himself, or advance a viable legal claim, in a criminal appeal, postconviction matter, or civil rights action. *Id.* Because plaintiff

has not alleged any defendant was responsible for the alleged deprivation, nor that he suffered any injury, the Court will dismiss without prejudice plaintiff's first claim.

(2) Claim No. 2—Medical Treatment of Shoulder

At all relevant times, plaintiff was a pretrial detainee at SCCC, so his constitutional claims fall within the ambit of the Fourteenth Amendment. *See Morris v. Zefferi*, 601 F.3d 805, 809 (8th Cir. 2010). However, the Fourteenth Amendment provides at least as much protection to pretrial detainees as the Eighth Amendment does to convicted prisoners. *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004). Accordingly, a pretrial detainee's medical claims are analyzed under the Eighth Amendment's deliberate indifference standard. *See Grayson v. Ross*, 454 F.3d 802, 808 (8th Cir. 2006); *see also Morris v. Cradduck*, 954 F.3d 1055, 1058 (8th Cir. 2020) (stating that a pretrial detainee has the same rights to medical care under the due process clause as an inmate has under the Eighth Amendment).

In order to establish deliberate indifference, a plaintiff must prove that he suffered from an objectively serious medical need, and that prison officials actually knew of and disregarded that need. *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019); *see also Hamner v. Burls*, 937 F.3d 1171, 1177 (8th Cir. 2019). To prevail under this standard, an inmate must demonstrate that a prison health care provider's actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Jackson v. Buckman*, 756 F.3d 1060, 1066 (8th Cir. 2014). "Deliberate indifference requires a highly culpable state of mind approaching actual intent." *Kulkay v. Roy*, 847 F.3d 637, 643 (8th Cir. 2017). Thus, a showing of deliberate indifference requires more than a mere disagreement with treatment decisions and is greater than gross negligence. *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006).

Plaintiff alleges that during the time he was placed in quarantine, Nurse Shandi would not allow him to visit the doctor regarding his prior shoulder injury. He states that he had injured his shoulder in a motorcycle accident, and had plates and screws surgically placed in his shoulder. He alleges that during quarantine he "had screws coming out." Notably, plaintiff does not allege he was experiencing any pain. Nor has plaintiff pled any factual information from which the Court could infer that plaintiff's situation was emergent. Also, plaintiff does not state the length of time he was delayed in seeing the doctor. Plaintiff states he has no feeling in his right pinky finger "I think due to no medical attention for the screws in my shoulder."

On initial review, the Court finds plaintiff has not stated a plausible claim for deliberate indifference to a serious medical need arising out of the delay in care and treatment of his prior shoulder injury. Liberally construed, plaintiff was seen by Nurse Shandi while he was quarantined during the COVID-19 pandemic. Nurse Shandi delayed plaintiff's appointment with a doctor due to the danger posed to the inmate population and medical personnel by the ongoing COVID-19 pandemic. Plaintiff has not alleged he was in any pain or that his condition was deteriorating during this delay. He does not allege any facts from which the Court could conclude his situation was an emergency. This type of treatment decision does not display the culpable state of mind required to establish deliberate indifference. *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006) ("A showing of deliberate indifference is greater than gross negligence and requires more than mere disagreement with treatment decisions."). Although plaintiff alleges that he "thinks" the numbness in his right pinky finger was caused by a delay in medical treatment, this is pure speculation. The factual allegations are not enough to raise a right to relief above the speculative level. *Twombly*, 550 U.S. at 555-56 (quoting Wright & Miller, "[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] legally

cognizable right of action"). The Court finds plaintiff has not sufficiently alleged a plausible claim of deliberate indifference to a serious medical need arising out of the delay in treatment of his prior shoulder injury. For this reason, the Court will dismiss without prejudice plaintiff's claim two.

    (3)    Claim No. 3—Contracting COVID-19 Virus

A prison official is deliberately indifferent if he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Prison officials have a duty to protect inmates from serious, communicable diseases. *Helling v. McKenney*, 508 U.S. 25, 33 (1993) (stating prison officials may not "be deliberately indifferent to the exposure of inmates to a serious, communicable disease"); *see also DeGidio v. Pung*, 920 F.2d 525, 533 (8th Cir. 1990) (determining that continuing failure of prison officials to institute a system to prevent the spread of tuberculosis violated the Eighth Amendment) (citing *Glick v. Henderson*, 855 F.2d 536, 539-40 (8th Cir. 1988) (stating plaintiff "could have a colorable claim under §1983 if he could show that there is a pervasive risk of harm to inmates of contracting the AIDS virus and if there is a failure of prison officials to reasonably respond to that risk")); *Burgess v. Newsom*, 2021 WL 4061611 at *3-4 (E.D. Ca. Sept. 7, 2021) (citing *Maney v. Brown*, 516 F. Supp. 3d 1161, 1179-80 (D. Or. 2021) (citing cases regarding officials' duty to protect inmates from exposure to communicable diseases under the Eighth Amendment)).

Plaintiff's complaint alleges that Lieutenant McKee, the daytime lieutenant of SCCC, placed plaintiff's wing of the jail on quarantine in October 2020. Plaintiff was not allowed to leave the wing for sixty days, during which time approximately three to six inmates per week contracted COVID-19. Plaintiff alleges the officials at SCCC "did nothing to protect us from it," the inmates

-8-

did not have clean clothes for nearly fourteen days at times, and were forced to use infected areas in the day room and showers. Plaintiff contracted the COVID-19 virus under these conditions, and has permanently lost his sense of smell.

Liberally construed, plaintiff alleges defendant McKee disregarded the known risk of a serious, highly contagious communicable disease and failed to take any steps to address the risk. Unlike many cases filed in this Court related to the spread of COVID-19 in the incarcerated population, here plaintiff contracted the virus and is suffering long-term consequences of the disease, including loss of the sense of smell. *Cf. Garner v. Keen*, No. 4:20-CV-1690-RWS, 2021 WL 1923507, *5 (E.D. Mo. May 13, 2021) (dismissing complaint on initial review where inmate complained about quarantine measures but had not contracted virus); *Miley v. ERDCC*, No. 4:21-CV-163-RLW, 2021 WL 1906490, *3 (E.D. Mo. May 12, 2021) (dismissing complaint on initial review where inmate alleged conclusory allegations regarding exposure to COVID-19); *Burgess v. Precythe*, No. 4:20-CV-1455-MTS, 2020 WL 7353703, *5 (E.D. Mo. Dec. 15, 2020) (allowing inmate to file amended complaint to cure deficiencies in alleging Eighth Amendment violations arising out of COVID-19 exposure in prison). The Court finds on initial review that plaintiff has stated a plausible claim that Lieutenant McKee was deliberately indifferent to plaintiff's exposure to a serious, communicable disease. The Court will order the Clerk of Court to issue process on the complaint as to defendant Lieutenant McKee in his individual capacity.

(4) Defendant St. Charles Correctional Center

In the caption of the complaint, plaintiff lists SCCC as a defendant. He does not, however, specifically list SCCC as a defendant in section I "the parties to this complaint" or in his statement of the claim. The Court will dismiss on initial review plaintiff's complaint as to defendant SCCC. SCCC is a subdivision of local government, and not a juridical entity, suable as such. *See Ketchum*

*v. City of West Memphis, Ark.*, 974 F.2d 81, 82 (8th Cir. 1992) (affirming dismissal of West Memphis Police Department and West Memphis Paramedic Services because they were "not juridical entities suable as such"); *Owens v. Scott Cty. Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003) (stating that "county jails are not legal entities amenable to suit"); *De La Garza v. Kandiyohi Cty. Jail*, F. App'x 436, 437 (8th Cir. 2001) (affirming district court dismissal of county jail and sheriff's department as parties because they are not suable entities). For this reason, the Court will dismiss plaintiff's claims brought against SCCC.

  (5)  Official Capacity Claims

The Court will dismiss plaintiff's claims against defendant Lieutenant McKee brought in his official capacity. In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999); *see also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the County"); *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"). To prevail on an official capacity claim, the plaintiff must establish the governmental entity's liability for the alleged conduct. *Kelly*, 813 F.3d at 1075. Plaintiff has not alleged St. Charles County's liability for the alleged conduct, and therefore the Court will dismiss plaintiff's claims brought against defendant Lieutenant McKee in his official capacity.

  (6)  Motion to Appoint Counsel

Finally, plaintiff has filed a motion for appointment of counsel. There is no constitutional or statutory right to appointed counsel in a civil case. *Nelson v. Redfield Lithograph Printing*, 728 F.2d 1003, 1004 (8th Cir. 1984). In determining whether to appoint counsel, the Court considers several factors including (1) whether the plaintiff has presented non-frivolous allegations; (2) whether the plaintiff will substantially benefit from the appointment of counsel; (3) whether there is a need to further investigate and present the facts related to the plaintiff's allegations; and (4) whether the factual and legal issues presented by the action are complex. *See Battle v. Armontrout*, 902 F.2d 701, 702 (8th Cir. 1990); *Johnson v. Williams*, 788 F.2d 1319, 1322-23 (8th Cir. 1986); *Nelson*, 728 F.2d at 1005.

Although plaintiff has presented non-frivolous claims, the Court finds the facts and legal issues involved in his case are not so complicated that the appointment of counsel is warranted at this time. The Court will deny without prejudice plaintiff's motion to appoint counsel.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion seeking leave to commence this action without prepaying fees or costs is **GRANTED**. [ECF No. 2]

**IT IS FURTHER ORDERED** that, within thirty (30) days of the date of this order, plaintiff must pay an initial filing fee of $1.00. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) this case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that the Clerk of Court shall issue process or cause process to issue upon claim three of the complaint as to defendant Lieutenant Unknown McKee in his individual capacity.

**IT IS FURTHER ORDERED** that plaintiff's claims brought against defendants Nurse Shandi Unknown and St. Charles Correctional Center are **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that plaintiff's claims brought against Lieutenant Unknown McKee in his official capacity are **DISMISSED without prejudice**.

**IT IS FURTHER ORDERED** that plaintiff's Motion to Appoint Counsel is **DENIED without prejudice**.  [ECF No. 3]

A separate order of partial dismissal will be entered herewith.

Dated this 17th day of September, 2021.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE